ORIGINAL

# In the United States Court of Federal Claims

No. 16-095

Filed: February 8, 2017

FEB - 8 2017

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WILLIAM A. MURPHY, | Overseas Differentials and Allowances Act, 5 U.S.C. §§ 5922, 5923(a); |
| Plaintiff, *pro se*, | Department of State Standardized Regulations ("DSSR") §§ 132.4, 132.11, 136; |
| v. | Department of Defense Instruction ("DoDI") 1400.25, Vol. 1250; |
| THE UNITED STATES, | Army in Europe Regulation ("AE Reg.") 690-500.592; |
| Defendant. | Rules of the United States Court of Federal Claims ("RCFC") 12(b)(6) (Failure To State Claim), 41(b) (Failure To Prosecute Claim). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**William A. Murphy**, Vicenza, Italy, Plaintiff, *pro se*.

**Vito S. Solitro**, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND FINAL ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS**

BRADEN, *Judge*.

    I.    **RELEVANT FACTUAL BACKGROUND.**[1]

William A. Murphy was a civilian employee of the Department of the Army (the "Army") who currently is living in Vicenza, Italy. Compl. at ¶ 3.[2] Pursuant to the Department of State Standardized Regulations ("DSSR") § 136(a),[3] as of February 1, 2002, Mr. Murphy received a

---

[1] The facts discussed herein were derived from the January 19, 2016 Complaint ("Compl.") and attached documents ("Compl. Tab 1–9").

[2] Mr. Murphy retired from Government service on October 14, 2016. Court Ex. A.

[3] The DSSR § 136(a), in relevant part, provides:

When quarters occupied by an employee are owned by the employee or the spouse, or both, or by the employee or the domestic partner, or both, an amount up to 10 percent of original purchase price (converted to U.S. dollars at original exchange

living quarters allowance ("LQA") to pay for personally-owned quarters ("POQ") during his tour of duty in Vicenza, Italy. Compl. Tab 2, at 6. A LQA for a POQ includes "rent," *i.e.*, an annual amount up to ten percent of the original price of the POQ for a period "not to exceed ten years" and a "utilities" subsidy that includes heat, light, fuel, and garbage disposal expenses. *See* DSSR § 136(a).

In November 2010, the Army reassigned Mr. Murphy to the United States and terminated the LQA. Compl. Tab 2, at 6–7. But, on June 16, 2012, the Army reassigned Mr. Murphy to his former position in Vicenza, Italy and he resumed occupancy of his POQ. Compl. at ¶ 6.

On October 21, 2013, the Army's Office of the Deputy Chief of Staff, G-1 authorized a LQA for Mr. Murphy's POQ, effective June 18, 2012, to expire on April 13, 2021. Compl. Tab 6. On November 27, 2013, however, the Army terminated the rental portion of Mr. Murphy's LQA, although, he continued to receive utility expenses. Compl. at ¶¶ 1, 7. In response, Mr. Murphy sent an e-mail and called the Army's G-1 Civilian Human Resources Agency Office to ask why payments for the rental portion of the LQA were terminated. Compl. at ¶ 9. The Army responded that, according to the DSSR, the rental portion of the LQA for Mr. Murphy's POQ was limited to "one instance per employee" for a total period of ten years, *i.e.*, 120 months, and Mr. Murphy had exhausted the rental portion of the LQA. Compl. at ¶ 9.

Sometime in late 2013, Mr. Murphy filed a claim with the Office of Personnel Management ("OPM") requesting an "exception to policy for an extension to continue receiving [LQA] for rental quarters in Italy beyond ten years[.]"[4] Compl. Tab 2, at 6. The reason Mr. Murphy requested an exception was that he was compelled to seek rental quarters suitable for his handicapped spouse, but had been unable to sell his POQ. Compl. Tab 2, at 6. Therefore, Mr. Murphy requested continuation of the rental portion of the LQA, either until he could sell his POQ or he met the Date Eligible For Return From Overseas ("DEROS"), whichever occurred first. Compl. Tab 2, at 6. On December 24, 2013, OPM denied Mr. Murphy's request for an extension, because Department of Defense Instruction 1400.25, Volume 1250 (the "DoDI") specifically prohibits granting a LQA for rental quarters, if the employee owns a POQ in the local area of work. Compl. Tab 2, at 6 (citing DoDI 1400.25, Vol. 1250). Therefore, OPM determined that it did not have the authority to consider Mr. Murphy's "exception" to the DoDI. Compl. Tab 2, at 6.

---

> rate) of such quarters shall be considered the annual rate of his/her estimated expenses for rent. Only the expenses for heat, light, fuel, (including gas and electricity), water, garbage and trash disposal and in rare cases land rent, may be added to determine the amount of the employee's quarters allowance in accordance with Section 134. The amount of the rental portion of the allowance (up to 10 percent of purchase price) is limited to a period not to exceed ten years [*i.e.*, 120 months] at which time the employee will be entitled only to above utility expenses, garbage and trash disposal, plus land rent.

DSSR § 136(a).

[4] Congress authorized the Director of OPM to settle claims involving federal civilian employees' compensation and leave. *See* 31 U.S.C § 3702(a)(2).

2

On April 10, 2014, Mr. Murphy filed a second claim with OPM requesting reconsideration of the Army's November 27, 2013 denial of the rental portion of his LQA. Compl. Tab 2, at 6. On November 25, 2014, OPM denied Mr. Murphy's request for reconsideration in Claim Decision 14-0030. Compl. at ¶ 12. Therein, the OPM ruled that the ten-year period, prescribed by the DSSR § 136(a), is cumulative and "[Mr. Murphy] has received the full ten-year-grant for the POQ he owns and occupies . . . regardless of his intervening two-year-return to the United States." Compl. at ¶ 14; Compl. Tab 2, at 7–8.

On March 17, 2015, *Stars and Stripes*, a newspaper published by the Department of Defense, featured an article reporting that, under the current regulations, "[e]mployees are allowed LQA for privately-owned quarters (POQ) in as many areas as they are assigned," but proposed changes to the DSSR would "[l]imit authorization of LQA for privately-owned quarters to [one] instance per employee and only when certified by the housing office and the budget office that [the authorization] is in the best interests of the government[.]" Compl. Tab 8, at 38–39. The March 17, 2015 article also stated that, if an employee returned to the United States after a LQA-eligible assignment, the employee would be eligible to receive LQA again, if the employee was immediately assigned to another overseas job. Compl. Tab 8, at 39.

On May 28, 2015, Mr. Murphy filed an appeal to the Merit Systems Protection Board ("the Board"). Compl. Tab 3, at 11. On July 10, 2015, the appeal was dismissed because the Board determined that it lacked jurisdiction over his appeal. Compl. Tab 3, at 14. Under 5 U.S.C. § 7512, the Board has jurisdiction to review an appeal from a removal, a suspension of more than 14 days, a reduction in grade or pay, or a furlough action of 30 days or less. But, the Board determined that it lacked jurisdiction, because the denial of a LQA benefit was not a "reduction of pay." Compl. Tab 3 at 13. The Board, noted, however, that Mr. Murphy could seek redress "with an appropriate United States Court." Compl. Tab 3 at 14.

## II. RELEVANT PROCEDURAL HISTORY.

On January 19, 2016, Mr. Murphy ("Plaintiff") filed a Complaint in the United States Court of Federal Claims alleging that, because the Army terminated his LQA when he was transferred back to the United States in October 2010, pursuant to the DSSR § 132.4,[5] a new ten-year period

---

[5] The DSSR § 132.4 provides:

When an employee is transferred (Section 040q) from a post at which an LQA has been granted, such grant shall terminate as of the following dates, whichever is earliest:
    a. the date immediately preceding the effective date of the employee's pre-departure temporary quarters subsistence allowance grant, except that the agency head or designee may continue LQA for a period of five days following commencement of the temporary quarters subsistence allowance grant if it determines that it is necessary for the employee to vacate existing quarters for such period in order to meet lease requirements for cleaning and repair;
    b. the date the employee commences travel under the transfer, or combined leave and transfer order; or

3

for a LQA commenced, when the Army reassigned him to Italy for a second tour of duty, under the DSSR § 132.11.[6] Compl. at ¶ 6. The January 19, 2016 Complaint also alleges that the Army unlawfully terminated the rental portion of Plaintiff's LQA on November 27, 2013, so that Plaintiff is entitled to reinstatement, pursuant to the DSSR § 132.11, for payments until April 2021, *i.e.*, approximately $1,600.00 per month for rent, including retroactive payments, dating back to November 2013, in the amount of $34,000.00. Compl. at ¶¶ 1–19.

On March 21, 2016, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(b)(6), for failure to state a claim upon which relief can be granted. Plaintiff failed to file a timely response.

On May 12, 2016, the court issued an Order To Show Cause, pursuant to RCFC 41(b), requiring Plaintiff to establish why this case should not be dismissed for failure to prosecute or to file a Response to the Government's March 21, 2016 Motion To Dismiss, no later than June 13, 2016.

On June 20, 2016, Plaintiff filed a Response to the May 12, 2016 Order To Show Cause and the Government's March 21, 2016 Motion To Dismiss ("Pl. Resp."), together with a October 21, 2013 letter from the Department of the Army, Office of the Deputy Chief of Staff, G-1 ("Pl. Resp. Ex. 1") that stated that Plaintiff's request for LQA had been processed, and that Plaintiff was

---

> c. the effective date of transfer, when no travel by the employee under the transfer is involved.

DSSR § 132.4.

[6] The DSSR § 132.11, in relevant part, provides:

[A] LQA granted to a newly appointed or transferred employee shall commence at his/her post as of one of the following dates, whichever is latest:
> a. the date of employee's arrival, except: (1) when the employee's arrival at the new post is delayed because of his/her being ordered to report to another place for consultation or temporary duty and his/her family arrives at the post before the employee, the grant shall commence as of the date of arrival of his/her family, and (2) as otherwise provided in Chapter 700 with respect to Defense Department teachers;
> b. the effective date of transfer if the employee is on detail or leave at the post to which transferred;
> c. the date of entrance on duty, if recruited locally;
> d. the date following termination of a temporary lodging allowance; or
> e. the date expenses for quarters are incurred.

DSSR § 132.11.

4

entitled to rental LQA at an annual rate of $14,817, for a period running from June 18, 2012 until April 13, 2021. Pl. Resp. Ex. 1.

On July 11, 2016, the court also issued an Order requiring the Government to file a Reply by July 28, 2016. On July 28, 2016, the Government filed a Reply ("Gov't Reply"). On August 24, 2016, Plaintiff filed a Sur-Reply ("Pl. Sur-Reply").

On October 27, 2016, the court issued an Order staying this case until November 1, 2016, so that the court could convene a telephone status conference with the parties. On that date, the court convened a telephone status conference to discuss whether Plaintiff was owed an additional month of rental LQA.[7] Thereafter, the court ordered the Government to show cause and provide documentation to evidence whether Plaintiff had exhausted the 120 month rental LQA period. 11/1/2016 Order, ECF No. 10.

On January 9, 2017, the Government filed a Status Report ("1/9/2017 Status Rep.") and the January 6, 2017 Declaration of Lawrence B. Mendy ("1/6/2017 Mendy Decl."), the Chief of the Defense Civilian Pay System Theater Support Office–Europe, stating that he had "personal knowledge of the documents and records showing the LQA payments made to [Plaintiff]," had conducted an "audit" of the LQA payments, and concluded that Plaintiff received the rental portion of the LQA for the full 120 month period. 1/6/2017 Mendy Decl. at ¶¶ 1–5. Mr. Mendy also stated that the audit payments were made on a biweekly basis and that Plaintiff received a total of $170,159.80 in LQA payments over 260 bi-weekly pay periods, *i.e.*, the equivalent of ten years of payment with 26 pay-periods per year. 1/6/2017 Mendy Decl. at ¶ 5. On January 11, 2017, the court requested that the Government supplement the January 9, 2017 Status Report with Mr. Mendy's audit and the records of the LQA payments made to Plaintiff.

On January 23, 2017, the Government filed an additional Status Report ("1/23/17 Status Rep."), and attached, as Exhibit A, records of the rental LQA payments made to Plaintiff. The payment records evidence that Plaintiff received 262 biweekly LQA payments. 1/23/17 Status Rep. Ex. A.

On January 26, 2017, the court convened a telephone status conference with the parties to ascertain whether Plaintiff was satisfied with the audit and whether he wished voluntarily to dismiss the January 19, 2016 Complaint or have the court issue an opinion regarding the Government's March 21, 2016 Motion To Dismiss, therefore allowing Plaintiff to file an appeal.

### III. DISCUSSION.

#### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in

---

[7] Based on the record, the court was concerned that Plaintiff received rental LQA for only 119 months, as opposed to the full 120 months to which he was entitled to under DSSR § 136. 11/1/2016 Order, ECF No. 10.

cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400. And, plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

Plaintiff's claims are made pursuant to the Overseas Differentials and Allowances Act (the "Act"), 5 U.S.C. §§ 5922–23, and the DSSR §§ 132.11 and 136(a). The Act authorizes a government-wide framework governing allowances for federal employees assigned to duty outside of the United States. *See* 5 U.S.C. § 5922(a) (stating that the Act applies to "employee[s] officially stationed in a foreign area"). Section 5923(a)(2) of the Act authorizes LQAs for federal employees when government-owned quarters are not otherwise available. *See* 5 U.S.C. § 5923(a)(2) (authorizing a "living quarters allowance for rent, heat, light, fuel, gas, electricity, and water"). Regulations promulgated by the Department of State implement the Act. *See* Executive Order 10903, January 9, 1961, 26 FED. REG. 217–03, 217–18 (designating and empowering the Secretary of State to promulgate the DSSR to implement the Act).

The Act and the DSSR were regarded by the United States Court of Appeals for the Federal Circuit to be money-mandating, when additional implementing regulations, in that case the DoDI and Marine Corps Bases Japan Order P12000.2A, designated a particular class of employees as LQA eligible. *See Roberts v. United States*, 745 F.3d 1158, 1166 (Fed. Cir. 2014) ("The [Department of Defense] *Instruction* and the [Marines Corps] *Order*, combined with the statute and DSSR regulations, are fairly construed as money-mandating because the payment of money is *required* when [the relevant official] determines that a particular [class] is LQA-eligible or an individual should receive an LQA-continuance . . . ." (emphasis original)); *see also* 5 U.S.C. § 5922(c) ("The allowances and differentials authorized *shall* be paid under regulations prescribed by the President governing . . . payments of the allowances and differentials and the respective rates at which the payments are made."). Once the regulations provide that a particular class is

entitled to LQA and the plaintiff alleges that he is within that class, the regulations are money-mandating and the court has jurisdiction. *Roberts* 745 F.3d at 1166.[8]

In this case the DoDI serves to "authorize the payment of [LQA] to [Department of Defense] appropriated fund civilian employees who are [United States] citizens living in foreign areas pursuant to the Department of State Standardized Regulations [*i.e.*, the DSSR] and sections 5522, 5584, and 5922 of title 5, United States Code." *See* DoDI No. 1400.25, Vol. 1250 §1(b)(1). And, an additional Army implementing regulation, Army in Europe Regulation 690-500.592 (the "Army Regulation"), mandates the payment of LQA to certain classes of civilian employees in Europe, including those that are grade GS-09 or higher, provided that they meet the other requirements of the DSSR. *See* Army In Europe Regulation ("AE Reg.") 690-500.592 § 7(a) (stating that "LQA *will* be granted for the following [civilian] employees" (emphasis added)).

The January 16, 2016 Complaint alleges that Plaintiff was a GS-13 civilian employee of the Army, stationed in Vicenza, Italy. Compl. Tab. 9. Therefore, the January 16, 2016 Complaint alleges that Plaintiff is within a class that is LQA eligible. Accordingly, the United States Court of Federal Claims has jurisdiction over the claims alleged therein.

### B. Standard Of Review For *Pro Se* Litigants.

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). This court traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Cl. Ct. 456, 468 (1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

### C. Standard Of Review For Motion To Dismiss Under RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and then whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level." *Id.* at 555. The court

---

[8] "The question of whether [plaintiff] in fact is within a class [that is] entitled to LQA is a merits issue." *Roberts* 745 F.3d at 1166.

7

must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Id.*

## D. The Government's March 21, 2016 Motion To Dismiss.

### 1. The Government's Argument.

The Government argues that the Army's interpretation of the DSSR § 136 is neither erroneous nor inconsistent, because the plain language limits the rental portion of a LQA for a POQ to ten years.[9] Gov't Mot. at 5–7. After ten years, an employee is paid the equivalent of 100 percent of the purchase-price of the POQ, and the rental LQA ceases. Gov't Mot. at 6. Nothing in the DSSR, however, supports Plaintiff's position that he is entitled to another ten years of rental LQA for his POQ, beginning June 2012. Gov't Mot. at 6.

In addition, neither the October 21, 2013 letter from the Army nor the March 17, 2015 *Stars and Stripes* article proposed any policy change that affects the Army's November 27, 2013 denial of Plaintiff's request for a second ten years of rental LQA. Gov't Mot. at 7–8. The October 21, 2013 letter from the Army, is not a contract, because it lacks adequate consideration. Gov't Mot. at 7. And, the March 17, 2015 *Stars and Stripes* article is not binding. Gov't Mot. at 8.

### 2. Plaintiff's Response.

Plaintiff responds that he is entitled under the DSSR § 132.11 to a LQA as of June 18, 2012, because he was a transferred employee. Pl. Resp. at 2. The DSSR § 136 does not provide that a LQA is cumulative, but instead that, when an employee is transferred overseas, a LQA grant commences on the date of the employee's arrival. Pl. Resp. at 2. In this case, an October 21, 2013 letter from the Department of the Army, Office of the Deputy Chief of Staff, G-1, authorized Plaintiff to receive a purchase-price allowance for the period June 18, 2012 to April 13, 2021. Pl. Resp. Ex. 1. The October 21, 2013 letter was never rescinded. Pl. Resp. at 2. That Plaintiff previously held the same position is irrelevant, since transfer was a separate action that was not a continuation nor cumulative, as the Government contends. Pl. Resp. at 3.

### 3. The Government's Reply.

The Government replies that the DSSR § 136 limits the rental LQA for a POQ to ten years. Gov't Reply at 2–3. Plaintiff's June 20, 2016 Response neither addresses how compensating an employee for 183.33% of the purchase-price makes sense, nor whether an employee is limited to rental LQA for ten years. Gov't Reply at 2–3. The October 21, 2013 form letter from the Army has no legal effect, because there was no independent consideration or detrimental reliance by the Plaintiff. Gov't Reply at 3–4. Finally, the March 17, 2015 *Stars and Stripes* article is irrelevant as it discusses proposed changes that would curtail the allowance of purchase-price to a one-time assessment. Gov't Reply at 4. Therefore the issue before the court is whether Plaintiff is entitled to 183.33% of the purchase-price of his POQ in Vicenza, Italy. Gov't Reply at 5.

---

[9] The DSSR states that an amount up to ten percent of the original purchase-price of the POQ shall be considered as the annual estimated expense for the rental portion of the POQ. *See* DSSR § 136(a).

8

#### 4. Plaintiff's Sur-Reply.

Plaintiff's Sur-Reply contends that the October 21, 2013 letter from the Army is legally binding, because it is the same document that the Army used to grant a LQA to all civilian employees. Pl. Sur-Reply at 2. In addition, the October 21, 2013 letter authorizes the exact monthly payments, when the monthly payments should start and end, and requests immediate notification of any issue that may affect allowance of the LQA. Pl. Sur-Reply at 2. Plaintiff adds that he is not attempting to obtain 183% of the purchase-price of his POQ. Pl. Sur-Reply at 3. "[E]stimated expense for rent" is the precise text used in the DSSR and the October 21, 2013 letter from the Army because the LQA does not reimburse an employee for purchase-price of a POQ, but reimburses the employee for a rent-equivalent. Pl. Sur-Reply at 3. Plaintiff adds that the March 17, 2015 *Stars and Stripes* article is relevant, because Plaintiff was a transfer employee, although he was assigned to same location as a prior transfer. Pl. Sur-Reply at 4.

### E. The Court's Resolution.

The payment of LQAs to federal employees is governed by the Overseas Differentials and Allowances Act, 5 U.S.C. § 5922, as implemented through the DSSR. For purposes of the Act, an "employee" is defined as "an employee in or under an agency" and "agency" is defined as "an Executive agency." 5 U.S.C. § 5921. As a civilian employee of the Army, Plaintiff was an employee of an executive agency. *See* 10 U.S.C. § 111 (stating that the Army is an executive department of the United States). The DoDI instructs that LQAs are to be paid to civilian employees pursuant to the DSSR. *See* DoDI No. 1400.25, Vol. 1250.[10] The Army Regulation states that it "must be used with" the DoDI and the DSSR, and also states that LQA will be paid to certain classes of civilian employees, provided that they "meet the basic eligibility requirements of [the] DSSR." AE Reg. 690-500.592 § 4.[11] Therefore, the DSSR governs whether Plaintiff is eligible for the rental portion of the LQA.

Plaintiff interprets the DSSR § 136 to mean that the ten-year period for the rental portion of the LQA should restart from zero when an employee is reassigned to a position where he was

---

[10] The DoDI in relevant part, states that:

Reissues Volume 1250 of DoD Instruction (DoDI) 1400.25 (Reference (b)) and establishes DoD policy, delegates authority, assigns responsibilities, and authorizes the payment of allowances and differentials to DoD appropriated fund civilian employees who are U.S. citizens living in foreign areas pursuant to the Department of State Standardized Regulations (Reference (c)) and sections 5522, 5584, and 5922 of title 5, United States Code (Reference (d)).

DoDI No. 1400.25, Vol. 1250 § (1)(b)(1).

[11] The Army Regulation states that the purpose of the Regulation is to "[i]mplement[] policy for paying [LQA] to appropriated fund (APF) civilian employees of the U.S. Army in Europe." AE Reg. 690-500.592 § 1(a). It further states that it "[m]ust be used with the Department of State Standardized Regulations and [DoDI No. 1400.25, Vol. 1250]." *Id.* § 1(b).

previously assigned and the employee moves into the same POQ for which he previously received rental LQA. Compl. ¶ 6; Pl. Resp. at 2. The Army interprets the DSSR § 136 to limit employees to a total of ten years of rental LQA for a POQ, at an annual rate of ten percent of the purchase price of such quarters, thereby compensating the employee for hundred percent of the purchase price of the POQ over a ten-year period. Gov't Reply at 3; Gov't Mot. 6–7.

The court is required to defer to an agency's interpretation of a regulation, "unless that interpretation is plainly erroneous or inconsistent with the regulation." *Decker v. Northwest Environmental Defense Center*, 133 S. Ct. 1326, 1337 (2013) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). In this case, however, Plaintiff challenges the Army's interpretation of a regulation promulgated by the Department of State. Courts afford deference to an agency's interpretation of regulations drafted by another agency, when the non-drafting agency is authorized to adopt or implement the subject regulations. *See Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 698 (1991) (affording deference to the Department of Labor's ("DOL") interpretation of regulations promulgated by the Department of Health, Education and Welfare ("HEW"), because the DOL was statutorily required to draft regulations "not more restrictive" than those promulgated by the HEW); *Sec'y of Labor v. Excel Mining, LLC*, 334 F.3d 1, 7 (D.C. Cir. 2003) (affording deference to the DOL's interpretation of HEW regulations); *see also Bortone v. United States*, 110 Fed. Cl. 668, 676 (2013) (affording deference to the Department of the Navy's interpretation of the DSSR). The Department of State was tasked with implementing the portions of the Act that govern the payment of LQAs for federal employees, and has done so through promulgation of the DSSR. Executive Order 10903, January 9, 1961, 26 FED. REG. 217–03, 217–18 (designating and empowering the Secretary of State to promulgate regulations implementing the Act). And, the Army has adopted the DSSR for determining when to pay LQAs. AE Reg. 690-500.592 § 1 (stating that the Army's regulation implementing payment of LQA "[m]ust be used with the Department of State Standardized Regulations"). The court therefore owes deference to the Army's interpretation of the DSSR.

The court has determined that the Army's interpretation of the DSSR § 136(a) is neither "plainly erroneous [n]or inconsistent" with the regulation. *Decker*, 133 S. Ct. at 1337. The phrase "[t]he amount of the rental portion of the allowance (up to ten percent of purchase price) is limited to a period not to exceed ten years," as set forth within the DSSR § 136(a), is not ambiguous. When an employee is reassigned to a location where the employee previously received LQA for a POQ, the LQA does not restart from zero upon transfer. This is because the rental portion of the LQA serves to compensate the employee for the purchase price of the POQ over a ten-year period. Were the court to accept Plaintiff's interpretation, *i.e.*, that the LQA began anew when Plaintiff was reassigned to the same location and moved into the same POQ, Plaintiff would be entitled to an amount of rental LQA significantly higher than the purchase price of his POQ.[12] Plaintiff has received the equivalent of the purchase price as permitted under the DSSR § 136, and the regulation precludes him from receiving additional rental LQA. *See* 1/23/2017 Status Rep. Ex. A. (evidencing 262 biweekly LQA payments made to Plaintiff).

---

[12] If a new ten-year period of rental LQA began in June 2012, as Plaintiff argues, then Plaintiff would receive a total of eighteen years and ten months of rental LQA for the same POQ, thereby receiving an amount approximately equivalent to 188.33% of his purchase price.

10

This is not to say, however, that the Army ceased to provide for Plaintiff's living expenses entirely once Plaintiff had received the full amount the rental portion of the LQA. The DSSR § 136 provides that an employee will continue to receive LQA payments for utilities, *i.e.*, "heat, light, fuel (including gas and electricity), water, [and] garbage and trash disposal," after the ten-year period for rental LQA payments has ended. *See* DSSR § 136(a). Plaintiff concedes that he continued to receive LQA payments for utilities. Compl. ¶7 ("I currently still receive utility expenses but not the rent portion.")

With respect to Plaintiff's other arguments, the October 21, 2013 letter from the Army granting Plaintiff the rental portion of the LQA from June 18, 2012 to April 13, 2021, is not binding on the Government. *See Falso v. Office of Pers. Mgmt.*, 116 F.3d 459, 460 (Fed. Cir. 1997) ("The Government cannot be estopped from denying benefits that are not permitted by law[,] even where the claimant relied on the mistaken advice of a government official or agency"); *see also Office of Personnel Management v. Richmond*, 496 U.S. 414, 434 (1990) (an agency is not authorized to make payment to a claimant in contravention of regulation requirements). Finally, the March 17, 2015 *Stars and Stripes* article has no effect on the court's interpretation of the DSSR § 136(a).

## IV. CONCLUSION.

For these reasons, the Government's March 21, 2016 Motion To Dismiss is granted. *See* RCFC 12(b)(6). The Clerk is directed to dismiss the January 19, 2016 Complaint.

**IT IS SO ORDERED.**

SUSAN G. BRADEN
Judge

# COURT EXHIBIT A

# Court Exhibit A

**From:** "Murphy, William A (Bill) CIV USARMY IMCOM EUROPE (US)"
<william.a.murphy5.civ@mail.mil>
**To:** "Peter_Terenzio@cfc.uscourts.gov" <Peter_Terenzio@cfc.uscourts.gov>

**Date:** Friday, October 28, 2016 10:11AM
**Subject:** Automatic reply: [Non-DoD Source] Murphy v. United States (No. 16-95) Telephone Status Conference

---

I have retired from Civil Service as of 14 Oct 16. Please call Gerry Sovie at 314- 637-8011 or Karen Riney at 314-637-8012 for assistance.   Thanks, Bill Murphy